1  AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
2  STAVROULA R. KYRIAZIS (Bar No. 358250)
    *skyriazis@kslaw.com*
3  **KING & SPALDING LLP**
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone: (213) 443-4355
5  Facsimile: (213) 443-4310

6  Attorneys for Plaintiff CSP LOGISTICS

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

11 | CSP LOGISTICS | Case Nos. 3:24-cv-09143-SK |
|---|---|
| Plaintiff, | **PLAINTIFF CSP LOGISTICS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| K18, Inc., a Delaware Corporation | Date: Monday, February 24, 2025 |
| Defendant. | Time: 9:30 am |
|  | Place: Courtroom C |

TO DEFENDANT AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that at 9:30 a.m. on February 24, 2025, at 450 Golden Gate Ave., San Francisco, California, 94102, Courtroom C, Plaintiff CSP Logistics ("Plaintiff") will, and hereby does, move this Court Pursuant to Federal Rule of Civil Procedure under Federal Rule of Civil Procedure 65(a) and Local Rules 7-2 and 65-2 to enter a preliminary injunction, enjoining Defendant K18, Inc. ("Defendant" and, collectively with Plaintiff, "Parties") from:

1. Distributing K18, Inc.'s hair products to professional beauty industrial outlets and retail stores in France and French territories unaffiliated with Plaintiff, including Sephora and Parashop, in violation of the April 1, 2021 Distribution Agreement ("Distribution Agreement") between Plaintiff and K18's predecessor, Aquis Hairsciences Inc..

2. Failing to offer its newly developed K18 products and product lines to Plaintiff.

3. Refusing to fill Plaintiff's orders for products, including a purchase order that was sent to Defendant on July 29, 2024 that Defendant has refused to ship unless Plaintiff agreed to terminate the Distribution Agreement and enter into a new, much less favorable, non-exclusive distribution agreement.

4. Failing to supply Plaintiff with K18 products in sufficient quantity to meet Plaintiff's needs.

Plaintiff's Motion for Preliminary Injunction is made on the grounds that (1) Plaintiff is likely to succeed on the merits in this lawsuit; (2) Plaintiff is suffering and will continue to suffer irreparable harm to its goodwill, market share, customers, and sales, unless the activities described above are enjoined immediately;  (3) Plaintiff would suffer more harm if the Court were to deny this Motion than Defendant would suffer if this Motion is granted; and (4) the public interest weighs in favor of granting injunctive relief.

This Motion is based on this Notice of Motion and supporting Memorandum of Points and Authorities; the concurrently filed declarations of Emilie Chich and Aaron Craig; all evidence received in connection with this motion; and such other evidence and written or oral arguments as the Court may consider and direct the parties to submit.


Case 4:24-cv-09143-HSG   Document 12   Filed 01/17/25   Page 3 of 19

Dated: January 17, 2025          **KING & SPALDING LLP**

                                       By:    */s/ Aaron S. Craig*
                                                AARON S. CRAIG
                                                STAVROULA R. KYRIAZIS
                         Attorneys for Plaintiff SAS CSP LOGISTICS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 3

    A. The Distribution Agreement ................................................................................. 3

    B. Defendant Violated Plaintiff's Exclusivity Right Under the Distribution Agreement by Selling to Plaintiff's Competitors Sephora and Parashop ............... 3

    C. Defendant Violated its Obligation to Offer Plaintiff its New Product Lines and Products ........................................................................................................... 4

    D. Defendant Repudiated and Breached the Distribution Agreement by Failing to Fulfill Plaintiff's Purchase Order ...................................................................... 4

    E. Defendant is Injuring Plaintiff ............................................................................... 5

III. ARGUMENT .................................................................................................................... 6

    A. Standard for Preliminary Injunction ..................................................................... 6

    B. Plaintiff is Likely to Prevail on its Claim ............................................................. 6

        1. Defendant has breached the Distribution Agreement by distributing its K18 products to Sephora and Parashop in France; failing to offer its new products to Plaintiff; failing to supply Plaintiff with K18 products in sufficient quantity to meet Plaintiff's needs; and refusing to fulfil Plaintiff's order. ....................................................................................... 6

    C. Plaintiff is Suffering Irreparable Harm and Will Continue to do so in the Absence of an Injunction ....................................................................................... 8

    D. The Injunction Will Not Substantially Injure the Defendant and the Balance of Equities Strongly Favors Injunctive Relief Without a Bond ............... 11

    E. Injunctive Relief is in the Public Interest ............................................................ 12

IV. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allergan v. Imprimis*,
  No. SACV171551DOCJDEX2019, 2019 WL 3029114 (C.D. Cal. 2019) .............................. 9

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ........................................................................................... 6

*Athleta, Inc. v. Pitbull Clothing Co., Inc.*,
  No. CV1210499CASFMOX, 2013 WL 142877 (C.D. Cal. 2013) ............................... 9, 10, 11

*Behrens v. Wells Fargo Home Mortgage, Inc.*,
  No. 2:15CV05332CASMRWX, 2015 WL 12646503 (C.D. Cal. 2015) ............................... 10

*Colwell Consulting LLC v. Papageorge*,
  No. 2:24CV01824JCG, 2024 WL 3811677 (D. Ariz. 2024) ....................................... 9

*Comet Techs. USA, Inc. v. Beuerman*,
  No. 18CV01441LHK, 2018 WL 1990226 (N.D. Cal. 2018) ...................................... 12

*DMF, Inc. v. AMP Plus, Inc.*,
  No. 2:18CV07090CASGJSX, 2019 WL 1099982 (C.D. 2019) ......................................... 9, 11

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ........................................................................................... 12

*Kaar v. Wells Fargo Bank, N.A.*,
  No. C1601290WHA, 2016 WL 3068396 (N.D. Cal. 2016) ...................................... 7

*Medcursor Inc. v. Shenzen KLM Internet Trading Co.*,
  543 F. Supp. 3d 866 (C.D. Cal. 2021) ............................................................................... 10

*Robinson v. Delicious Vinyl Records Inc.*,
  No. CV134111CASPLAX, 2013 WL 3983014 (C.D. Cal. 2013) ....................................... 10

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
  102 F.3d 12 (1st Cir. 1996) ............................................................................................... 8

*SMET v. RJCD, LLC*,
  No. CV109566FFMX, 2011 WL 13152063 (C.D. Cal. 2011) ............................................. 12

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ............................................................................................. 9

*Thalheimer v. City of San Diego*,
   645 F.3d 1109 (9th Cir. 2011) .................................................................................................. 12

*Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am. Inc.*,
   No. SACV1000052JVSRNBX, 2010 WL 11596111 (C.D. Cal. 2010) .......................... 8, 9, 10

*Way.com, Inc. v. Singh*,
   No. 3:18CV04819WHO, 2018 WL 6704464 (N.D. Cal. 2018) ................................................ 7

*Winter v. Natural Res. Def., Council, Inc.*,
   555 U.S. 7, 129 S. Ct. 365 (2008) ............................................................................................. 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In April 2021, Defendant granted Plaintiff exclusive rights to distribute Defendant's K18 hair products in France with the goal of Plaintiff "achiev[ing] and encourage[ing] maximum market penetration" of these brand new products. Plaintiff has been so successful in increasing brand awareness and market penetration for K18 products in France, that in 2024, under new ownership (multinational conglomerate Unilever[1]), Defendant started selling its K18 products through additional distributors and retail chains Sephora and Parashop, in flagrant breach of Plaintiff's exclusive distribution rights.

Plaintiff's exclusivity to distribute K18 products in France derives from a five-year agreement dated April 1, 2021 ("Distribution Agreement").[2] Not only has Defendant brazenly breached its exclusivity promise to Plaintiff, Defendant has also refused to fill Plaintiff's orders since July 2024, in an attempt to strong-arm Plaintiff into signing a new, short-term, non-exclusive distribution agreement.  Defendant has also refused to offer Plaintiff its newly developed K18 products and product lines, and is not supplying the Plaintiff with K18 products in sufficient quantity to meet Plaintiff's needs.  Plaintiff asks this Court to enter a preliminary injunction, barring Defendant from (1) distributing K18 products to any French outlets other than Plaintiff in the distribution channels for which Plaintiff was granted exclusive distribution rights; (2) refusing to offer Plaintiff its new products and product lines; (3) refusing to fill purchase orders properly submitted by Plaintiff; and (4) refusing to supply Plaintiff with K18 products in sufficient quantity to meet Plaintiff's needs, in order to put a halt to the irreparable harm currently being visited on Plaintiff.

Plaintiff markets and sells hair products, cosmetics, perfumes, and other products throughout France, including in its own line of highly regarded "Bleu Libellule" stores.

---

[1] https://consumergoods.com/unilever-reshapes-beauty-portfolio-through-k18-acquisition-and-elida-sale

[2] The Distribution Agreement was entered into between Plaintiff and Aquis Hairsciences Inc., a California corporation.  Aquis Hairsciences Inc. was converted to Defendant in 2023, making Defendant the successor to Aquis' obligations under the Distribution Agreement.

(Declaration of Emilie Chich ("Chich Decl.") at ¶ 2.)  Plaintiff also sells products on a wholesale basis to customers such as hair salons, specifically the salons of the Provalliance Group, to which the plaintiff belongs and which includes well-known hair salon networks such as Franck Provost, Jean Louis David and Saint Algue, and specialty beauty retail stores.  (Chich Decl. at ¶ 2.)

The parties entered into the Distribution Agreement dated April 1, 2021, giving Plaintiff exclusive distribution rights to K18 products for French PBIOs (Professional Beauty Industrial Outlets) and Retail.  (Chich Decl. Exh. 1 at ¶¶ 2.1.1, 2.2.1.)  Under the Distribution Agreement, Defendant also agreed to offer to Plaintiff "any new products or product lines developed by K18," and to supply Plaintiff with sufficient quantities of K18 products, as well as to fill Plaintiff's orders of K18 products in exchange for Plaintiff's payment. (Chich Decl. Exh. 1 at ¶¶ 2.1.2, 4.1, 7.1.)

Defendant is ignoring these four contractual obligations of exclusive distribution, offering new products, fulfilling orders and supplying Plaintiff with sufficient product.  Defendant has not been shy about its reasons:  Defendant demands that Plaintiff agree to terminate its existing exclusive Distribution Agreement (despite the initial term ending on March 31, 2026) and sign a non-exclusive agreement with much less favorable business terms.  (Chich Decl. at ¶ 7.)

Plaintiff is likely to succeed on the merits. Defendant's breaches of sections 2.1.1, 2.1.2, 2.2.1 and 7.1 of the Distribution Agreement are undeniable and inexcusable.  These sections require Defendant to refrain from selling K18 hair products to French retailers and professional beauty industrial outlets other than Plaintiff, to offer new product lines to Plaintiff, to supply Plaintiff with sufficient quantity of K18 products, and to fill Plaintiff's purchase orders.  As a result of these contractual breaches, Plaintiff has lost and continues to lose market share, customers, goodwill, sales and inventory.  (Chich Decl. at ¶¶ 9-14.) This constitutes irreparable harm.

The balance of the equities demonstrates the Motion should be granted. The parties entered into the Distribution Agreement and Plaintiff has satisfied all its obligations under the Distribution Agreement. (Chich Decl. at ¶ 4.) Defendant and its new distributors have achieved ill-gotten gains in terms of goodwill, customers, market share and sales due to Defendant's failure to abide by its contractual duties. Defendant's only argument can be that the equities should allow it to breach its contract—a proposition wholly lacking in legal support.

Finally, the public interest supports the injunction. There is a strong public interest in enforcing parties' contractual duties. The public interest is not served where parties to contracts use strong-arm tactics in breach of their duties in order to force a renegotiation. The Court should grant Plaintiff's Motion and enter a preliminary injunction enjoining Defendant's violations of the Distribution Agreement.

## II.   FACTUAL BACKGROUND

### A.   The Distribution Agreement

On April 1, 2021, Plaintiff and Defendant's predecessor, Aquis Hairsciences Inc., entered into the Distribution Agreement. (Chich Decl. Exh. 1 and ¶ 3.) The Distribution Agreement's Term ends on March 31, 2026. (Chich Decl. Exh. 1 at ¶¶ 3.1, 3.2.) The Distribution Agreement provides Plaintiff with the exclusive right to distribute K18 products in France and French territories to "PBIOs and Retail in the Territory." (Chich Decl. Exh. 1 at ¶¶ 2.1.1, 2.2.1, Exh. B, pp. 1, 23.) The Distribution Agreement defines PBIOs (Professional Beauty Industrial Outlets) as including "professional beauty supply stores," and excluding customers like grocery stores, food/drug mass outlets, mass retailers and department stores. (*Id.* Exh. B.) The Distribution Agreement defines "Retail" as "retail stores offering personal care and beauty products and may include third-party retailers." (*Id.* at ¶ 2.1.1.). Sephora and Parashop are "Retail," as defined by the Distribution Agreement. (Chich Decl. at ¶ 5 and Exh. 1 at ¶ 2.1.1.)

The Distribution Agreement obligates Defendant to offer to Plaintiff, "[a]ny new products or product lines developed by K18" (Chich Decl. Exh. 1 at ¶ 2.1.2.) and to supply Plaintiff with K18 products in sufficient quantity to meet Plaintiff's needs to achieve and encourage maximum market penetration. (*Id.* at ¶ 4.1.)

The Parties agreed that Plaintiff would submit written purchase orders to Defendant and Defendant would supply Plaintiff with K18 products. (Chich Decl. Exh. 1 at ¶¶ 7.1, 7.3.) Plaintiff then had 30 days from Defendant's delivery of K18 products to pay Defendant. (Chich Decl. Exh. 1 at ¶ 9.2.)

### B.   Defendant Violated Plaintiff's Exclusivity Right Under the Distribution Agreement by Selling to Plaintiff's Competitors Sephora and Parashop

Defendant is selling K18 products to Sephora, a global chain of personal care and beauty products stores, and also to Parashop, a French "parapharmacy" company selling a wide variety of hair, face and skin beauty products. (Declaration of Aaron Craig ("Craig Decl.") Exh. 8, pp. 22-193.) Sephora also promoted Defendant's K18 hair products in its "Christmas Collection" in November 2024. (Craig Decl. Exh. 9.)

### C. Defendant Violated its Obligation to Offer Plaintiff its New Product Lines and Products

Defendant is expressly required to offer Plaintiff its new products and product lines under the Distribution Agreement. (Chich Decl. Exh. 1 at ¶ 2.1.2.)  It has not done so.

On July 4, 2024, Plaintiff asked Defendant to provide it with information about its K18 Christmas 2024 gift sets, such as the description and contents of the gift sets, images, the purchase price and recommended retail price, minimum order quantities, and availability date. (Chich Decl. Exh. 2.) However, Defendant refused Plaintiff's request by never responding to it.  (Chich Decl. at ¶ 6.)  In November 2024, those same Christmas 2024 gift sets that Plaintiff requested became available for sale in Sephora stores in France. (Craig Decl. Exh. 9.)

Moreover, with respect to a new 10 ml "molecular oil" product, while Defendant purported to offer to Plaintiff, Defendant refused to fill Plaintiff's order, first on the pretext of "a mistake with the price," and then later with the further pretext that the item was out of stock.  (Chich Decl. Exh. 3 and ¶ 6.)

### D. Defendant Repudiated and Breached the Distribution Agreement by Failing to Fulfill Plaintiff's Purchase Order

In accordance with the Distribution Agreement, Plaintiff submitted purchase order POH240700323 (the "Purchase Order") on July 29, 2024, to purchase various quantities of six K18 hair products. (Chich Decl. Exh. 4.) Instead of supplying Plaintiff with the ordered products, Defendant responded, that same day, that it would "be holding this PO until contracts are signed" (Chich Decl. Exh. 5)—a reference to a new, short-term, non-exclusive, and more expensive distribution agreement that Defendant wanted to use as a replacement for the parties' Distribution Agreement.  Plaintiff responded the following morning, July 30, 2024, that "I do not understand

why you are not proceeding with this order. Can you please clarify? Not serving this PO is putting us at risk of [going] out of stock." (Chich Decl. Exh. 5.)

Defendant than added, as a supposed justification for not filling the order, that it believed Plaintiff had a past due invoice. (*Id.*) Plaintiff quickly confirmed and provided proof of the prior payment, and asked Defendant again to "please release the order." (*Id.*) However, Defendant still refused to release the order until a new contract was signed. (*Id.*) Making this conduct even more reprehensible was the fact, at the time of this correspondence, Defendant had not even sent Plaintiff the new contract! (*Id.*)

After Defendant finally sent Plaintiff the new contract (Chich Decl. Exh. 6) for Plaintiff to review on August 20, 2024, Plaintiff told Defendant that its new business terms were unacceptable to Plaintiff because "the conditions are too far from our current agreement." (Chich Decl. Exh. 7.) Not only were the prices in the new agreement "an increase between 100% [and] 178% on our current purchasing prices," they also purported to remove professional products from the product assortment, which represented 25% of Plaintiff's K18 product sales. (*Id.*) Most problematically for Plaintiff, however, the new distribution agreement proposed by Defendant was **non-exclusive.** (Chich Decl. Exh. 6 at ¶ 2.)

On September 23, 2024, Plaintiff reminded Defendant that they would be out of K18 stock very soon, and demanded that Defendant make the order available for shipping before September 27, 2024. (Chich Decl. Exh. 7.) However, Plaintiff has yet to receive its order from Defendant. (Chich Decl. at ¶ 8.)

### E.     Defendant is Injuring Plaintiff

Defendant is causing injury to Plaintiff in the form of reduced goodwill, market share, customers, sales, and reduction of inventory. (Chich Decl. at ¶¶ 9-14.) Plaintiff has gone from having 100% market share in its distribution channels in France, to a much lower share in light of competition from Sephora and Parashop (the amount of the decline in market share cannot be known until Plaintiff obtains discovery from Defendant about its French sales to Sephora and Parashop). (Chich Decl. at ¶ 10.) As a direct consequence of Defendant's misconduct, Plaintiff's average sales in 2024 were down 14% from its 2023 levels, and notably, since Sephora began

offering K18 products, Plaintiff's monthly sales of K18 products have decreased by 31%. (*Id.*) Plaintiff's decline in sales has been accompanied by a massive loss in unique customers and customer acquisitions, as certain customers have switched from buying K18 products from Plaintiff to buying them from Sephora and Parashop, especially as the latter were able to offer them at a discount. (Chich Decl. at ¶¶ 10-12.)

Plaintiff's inventory levels of K18 products are almost depleted. These low inventory levels are harming Plaintiff's ability to operate its business as it would in the normal course. (Chich Decl. at ¶ 11.) K18's refusal to fill CSP's orders has left CSP with only two choices: maintain prices and run out of K18 stock faster, which would harm CSP's goodwill with its customers, or raise prices and lose customers and goodwill. (*Id.*) CSP has chosen the latter approach as the way to try to minimize the impact of K18's misconduct on CSP's goodwill and reputation. (*Id.*)

### III. ARGUMENT

#### A. Standard for Preliminary Injunction

Plaintiff is entitled to a preliminary injunction to enjoin Defendant from its egregious strong-armed tactics upon a showing that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. *Winter v. Natural Res. Def., Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 376 (2008). In the Ninth Circuit, after *Winter*, the issuance of a preliminary injunction may be supported where there are "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff . . . so long as the plaintiff also shows that there is likelihood of the irreparable injury and that the injunction is in the public interest*.*" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). As set forth below, a preliminary injunction is warranted because Plaintiff is able to meet each of these requirements.

#### B. Plaintiff is Likely to Prevail on its Claim

    **1. Defendant has breached the Distribution Agreement by distributing its K18 products to Sephora and Parashop in France; failing to offer its new products to Plaintiff; failing to supply Plaintiff with K18 products**

6

**in sufficient quantity to meet Plaintiff's needs; and refusing to fulfil Plaintiff's order.**

Plaintiff will prevail on its breach of contract claim because Defendant has breached four separate obligations under the contract.

To state a claim for breach of a contract, a plaintiff must plead: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Way.com, Inc. v. Singh,* No. 3:18CV04819WHO, 2018 WL 6704464, at *6 (N.D. Cal.); *Kaar v. Wells Fargo Bank, N.A.*, No. C1601290WHA, 2016 WL 3068396, at *1 (N.D. Cal. 2016).

The parties entered into the Distribution Agreement in April 2021. (Chich Decl. Exh. 1 at ¶ 2.1.1.) The parties performed according to the contract through the end of 2023 with only minor routine disputes. (Chich Decl. at ¶ 3.)

First, Defendant has breached the Distribution Agreement's grant of exclusive distribution rights to Plaintiff by selling K18 products to and through Sephora and Parashop in France. (Craig Decl. Exh. 8, pp. 22-193.) The distribution channels for which Plaintiff has exclusive distribution rights are Professional Beauty Industrial Outlets ("PBIO") and "retail stores offering personal care and beauty products." (Chich Decl. Exh. 1 at ¶¶ 2.1.1, 2.2.1.) Sephora and Parashop are both retail stores offering personal care and beauty products, including K18 productions. (Chich Decl. at ¶ 5; Craig Decl. Exhs. 8-9.)

Second, Defendant has also breached its obligation under the Distribution Agreement to offer "any new products or product lines" to Plaintiff. Sephora and Parashop are selling several K18 products, including Christmas gift sets and other new products that Defendant refused to sell to Plaintiff under various pretenses. (Chich Decl. at ¶ 6.) For example, Defendant offered a "molecular hair oil" product to Plaintiff, which Plaintiff immediately tried to order, only to be told by Defendant first that the price was incorrect, and subsequently that the product was "out of stock." (*Id.*)

Third, Defendant has breached the Distribution Agreement by refusing to fill Plaintiff's purchase order and conditioning its filling of the order on Plaintiff signing a new, less favorable,

non-exclusive distribution agreement. On July 29, 2024, Plaintiff submitted a six-figure purchase order to Defendant. (Chich Decl. Exh. 4.) However, Defendant refused to fill the order until Plaintiff agreed to terminate the Parties' existing exclusive distribution agreement and sign a new, non-exclusive agreement. (Chich Decl. Exhs. 5-6.) Plaintiff has faithfully performed under the contract since its inception. Defendant was obliged to fill Plaintiff's order, regardless of whether Plaintiff signed Defendant's new agreement. Therefore, Defendant breached the Parties' agreement and should be enjoined. As a direct and proximate result of Defendant's material breach of the Distribution Agreement, Plaintiff has not received its shipment and is in imminent danger of running out of K18 products to supply to its customers. (Chich Decl. Exhs. 3-4 and ¶¶ 9-11.)

Fourth, Defendant has breached the Distribution Agreement by failing to supply Plaintiff with K18 products in sufficient quantity to meet Plaintiff's needs. (Chich Decl. at ¶¶ 9-11.)

For the same reasons that Plaintiff is likely to prevail on the merits of its breach of contract claim, it is also likely to prevail on the merits of its breach of implied contract claim and its claim for breach of the covenant of good faith and fair dealing.

### C.   Plaintiff is Suffering Irreparable Harm and Will Continue to do so in the Absence of an Injunction

Defendant's flagrant contractual breaches and strong-arm tactics are causing Plaintiff to suffer irreparable harm to its market share, customers, sales, goodwill and inventory. Where a plaintiff suffers "substantial injury that is not . . . adequately compensable by money damages, irreparable harm is a natural sequel." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996). Many courts in this Circuit have found that injuries of the sort being inflicted here by Defendant are not adequately compensable by money damages.

Plaintiff has suffered a massive decrease in inventory due to Defendant's refusal to fill Plaintiff's orders. (Chich Decl. at ¶¶ 9-11.) In *Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am. Inc.*, No. SACV1000052JVSRNBX, 2010 WL 11596111, at *5-10 (C.D. Cal. 2010), the court entered an injunction against the defendant's breaches of the parties' partnership agreement, which included refusing to sell inventory to the plaintiff. Evidence of loss of inventory due a party's supply termination supports a finding of irreparable harm. (*Id.* at *5.) Likewise, inability to find

alternative sources of a plaintiff's inventory supply can support a finding of irreparable harm. (*Id.* at *8.) The *Toyo Tire* court found that a dramatic adverse effect on the plaintiff's tire inventory levels, along with a loss in customer relations, business goodwill, and lack of a feasible alternative source for the plaintiff's tire supply, constituted irreparable harm. This Court should make a similar finding here.

Plaintiff has also suffered a huge decline in market share, which has gone from around 100% (in the contractual distribution channels in France), to a much lower share in those same distribution channels, in light of competition from Sephora and Parashop. (Chich Decl. at ¶ 10.) As a consequence, Plaintiff's average sales in 2024 are down 14% from its 2023 levels. (*Id.*) Plaintiff has also lost customers, including particularly important and valuable holiday customers. (*Id.*) Plaintiff also suffered huge declines during September-December 2024 at its Bleu Libellule stores in France in both the number of unique customers buying a K18 product, and customer acquisitions (new customers who purchased a K18 product and created an account with Plaintiff), as compared with the same period in 2023. (Chich Decl. at ¶ 12.) Courts have found that evidence of a plaintiff's loss of market share, customers, and sales caused by the defendant's illegal conduct clearly supports a finding for irreparable harm. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 841 (9th Cir. 2001) (finding that "[e]vidence of threatened loss of prospective customers . . . certainly supports a finding of the possibility of irreparable harm."); *see also Allergan v. Imprimis*, 2019 WL 3029114, at *12 (C.D. Cal. 2019); *Colwell Consulting LLC v. Papageorge*, No. 2:24CV01824JCG, 2024 WL 3811677, at *9 (D. Ariz. 2024).

Here the loss of market share, customers and sales are not merely prospective—Plaintiff has already suffered these injuries. Lost market share, lost customer relationships and decreased sales all support a finding of irreparable harm. *DMF, Inc. v. AMP Plus, Inc.*, No. 2:18CV07090CASGJSX, 2019 WL 1099982 (C.D. Cal. 2019), at *12. Further, Plaintiff is losing reputation and good will (Chich Decl. at ¶¶ 9-14), and "losing control of one's reputation and goodwill in the marketplace supports the issuance of an injunction." *Allergan v. Imprimis*, No. SACV171551DOCJDEX2019, 2019 WL 3029114, at *12; *Athleta, Inc. v. Pitbull Clothing Co.,*

1    *Inc.*, No. CV1210499CASFMOX, 2013 WL 142877 (C.D. Cal. 2013); *Robinson v. Delicious Vinyl Records Inc.*, No. CV134111CASPLAX, 2013 WL 3983014 (C.D. Cal. 2013).

Finally, to support a preliminary injunction, the claimed harm must not only be irreparable, it must be imminent. *Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866, 871 (C.D. Cal. 2021); *Behrens v. Wells Fargo Home Mortgage, Inc.*, No. 2:15CV05332CASMRWX, 2015 WL 12646503 (C.D. Cal. 2015). Here, the injuries which Defendant is causing Plaintiff are already happening. Every day that Sephora and Parashop sell K18 products in France, Plaintiff's injuries deepen. Plaintiff is suffering, and will suffer increasingly, irreparable harm to its market share, customers, sales, goodwill and inventory.

In the absence of an injunction, Plaintiff's stock of Defendant' K18 product will be completely depleted in the first half of 2025. (Chich Decl. at ¶ 9 and Exhs. 3-4.) As set forth above, Plaintiff has warned Defendant of its dwindling supply of K18, which Plaintiff cannot replenish unless Defendant fills Plaintiff's order. (*Id.*) And like the plaintiff in *Toyo Tire*, Plaintiff cannot find an alternative source of K18 products to make up for the shortfall caused by Defendant's conduct, because Defendant is the sole manufacturer of K18 hair products. (*Id.* at ¶ 9.)

Plaintiff will continue to lose customers and market share if this Motion is not granted. Plaintiff achieves nearly 87% of its sales of K18 products in its own locations and because of the unlawful competition that Plaintiff now faces from Sephora and Parashop, its average sales have decreased by 14% since 2023. (Chich Decl. at ¶ 10.) Moreover, Sephora included Defendants' K18 product in its Christmas Collection, (Craig Decl. Exh. 9.), which cost Plaintiff countless holiday customers as well. (Chich Decl. at ¶ 13.) These losses of current and prospective customers constitute irreparable harm.

Plaintiff is also losing reputation and goodwill because of Defendants' conduct, and such harms will escalate in the absence of a preliminary injunction. (Chich Decl. at ¶¶ 9-14.) This constitutes irreparable harm sufficient to support a preliminary injunction. *Athleta*, 2013 WL 142877, at *11.

Plaintiff is currently suffering irreparable harms to its market share, customers, sales, goodwill and inventory. These harms will increase unless Defendant's conduct is enjoined.

**D.     The Injunction Will Not Substantially Injure the Defendant and the Balance of Equities Strongly Favors Injunctive Relief Without a Bond**

Without the remedy of injunctive relief, Plaintiff's rights under the Distribution Agreement will be stripped and Plaintiff will be prejudiced. The injunctive relief Plaintiff seeks merely requires Defendants to comply with the terms of the Distribution Agreement.

This Court has consistently found that the balance of equities weighs in favor of entering an injunction where the Plaintiff has suffered harm to its brand, business, goodwill, reputation, and loss of market share. *See, e.g., DMF, Inc. v. AMP Plus, Inc.,* 2019 WL 1099982, at *14 (finding balance of hardships tipped in favor of Plaintiff because of irreparable harm in the form of decreased market share, loss of customer relationships, price erosion, and a jeopardized ability to recoup their investment in developing the technology at issue); *Delicious Vinyl Records*, 2013 WL 3983014, at *7 (finding balance of equities weighed in Plaintiffs' favor where Plaintiffs demonstrated the irreparable harm likely to befall them in the form of harm to plaintiffs' brand, business, goodwill, and reputation, and loss of market share); *Athleta*, 2013 WL 142877, at *11 (finding balance of equities weighed in favor of Plaintiff for harm to Plaintiff's goodwill and business reputation).

Under the Distribution Agreement, Plaintiff bargained for the exclusive right to distribute and sell K18 hair products to industrial beauty outlets and retail stores in France. (Chich Decl. Exh. 1 at ¶¶ 2.1.1, 2.2.1.)  The parties agreed that Defendant would offer Plaintiff all new product lines, supply Plaintiff with K18 products in sufficient quantity to meet Plaintiff's needs, and that Plaintiff would submit written purchase orders to Defendant and Defendant would supply those orders. (Chich Decl. Exh. 1 at ¶¶ 2.1.2, 4.1, 7.1.)  Nothing has occurred to relieve Defendant of its duties: Plaintiff has not breached its obligations under the Distribution Agreement, Plaintiff has not discharged Defendant of its obligations, and the parties have not terminated the existing Agreement. (Chich Decl. at ¶ 4.)  By this lawsuit and this motion, Plaintiff is simply trying to enforce its contractual rights to acquire for resale Plaintiff's products, and to retain its exclusive right to distribute Defendant' K18 products in France. (Chich Decl. Exh. 4.)  In contrast, Defendant is deliberately and willfully breaching its contractual obligations as a means to force Plaintiff to sign a non-exclusive agreement with much less favorable business terms. (Chich Decl. Exh. 5.)

      Plaintiff should not be required to post a bond for preliminary injunctive relief that "simply enjoin[s] Defendant from doing something Defendant never has a right to do in the first place." *Comet Techs. USA, Inc. v. Beuerman*, No. 18CV01441LHK, 2018 WL 1990226, at *6 (N.D. Cal. 2018); *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."). Here, the only hardship Defendant could possibly raise is the loss of profits from selling its K18 products to other French distributors. However, absent a "final breach" by Plaintiff, the Distribution Agreement does not give Defendant the right to sell its product to other distributors in France. (Chich Decl. Exh. 1 at ¶¶ 2.1.1, 2.2.1 15.1.7.) Because there is no hardship to holding Defendant to the bargain it struck, the balance of hardships tips decisively in Plaintiff's direction and a bond is unnecessary.

      **E.**    **Injunctive Relief is in the Public Interest**

      "The public interest inquiry generally addresses the impact upon nonparties of granting or withholding injunctive relief." Hon. V. Phillips and Hon. K. Stevenson, <u>Federal Civil Procedure Before Trial</u>, 13:76 at 13-49 (The Rutter Group, 2019). There is also a public interest "in upholding the law and having parties abide by their legal duties." (*Id*. at 13-50, citing, *inter alia*, *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128-29 (9th Cir. 2011).) Moreover, there is a public interest in ensuring that those who abide by the law can "reap the benefits he is entitled to pursue." *SMET v. RJCD, LLC*, No. CV109566FFMX, 2011 WL 13152063, at *3 (C.D. Cal. 2011) (finding an injunction was in the public interest where defendant's continued unauthorized use of the plaintiff's registered mark would "make it virtually impossible" for plaintiffs to realize the benefits of its mark).

      Here, Plaintiff has performed all of its obligations under the Distribution Agreement. (Chich Decl. at ¶¶ 3-4.) In contrast, Defendant has intentionally breached the Distribution Agreement. Thus, granting the requested injunction would not only protect Plaintiff's contractual rights, but would prevent Defendant from unlawfully pretending that its legal duties and the contract do not exist, and would put an end to Defendant' abusive and unlawful conduct. Accordingly, restraining the Defendant distributing K18 products to "Retail" and "PBIO" outlets in France other than

Plaintiff, and from refusing to fill Plaintiff's orders, is in line with public policy.

## IV.     CONCLUSION

For the reasons set forth herein, Plaintiff respectfully asks the Court to grant its motion and enter the preliminary injunction, without need of a bond, in the form lodged concurrently herewith.

Dated: January 17, 2025                             **KING & SPALDING LLP**

                                             By:     */s/ Aaron S. Craig*
                                                     AARON S. CRAIG
                                                     STAVROULA R. KYRIAZIS
                                Attorneys for Plaintiff CSP LOGISTICS