1  AARON S. CRAIG (Bar No. 204741)
   *acraig@kslaw.com*
2  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
3  Los Angeles, CA 90071
   Telephone: (213) 443-4355
4  Facsimile: (213) 443-4310

5  Attorney for Plaintiff CSP LOGISTICS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| CSP LOGISTICS | Case Nos. 3:24-cv-09143-SK |
|---|---|
| Plaintiff, | **DECLARATION OF EMILIE CHICH IN SUPPORT OF PLAINTIFF CSP LOGISTICS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| K18, Inc., a Delaware Corporation | |
| Defendant. | |

DECLARATION OF EMILIE CHICH         Case No.: 3:24-cv-09143-SK

I, Emilie Chich, declare as follows:

1. I am the Director of Purchases and Orders of Plaintiff CSP Logistics' ("CSP") Bleu Libellule stores and have had that position for 5 years. I have worked at CSP since 2007. I have personal knowledge of the facts set forth herein and, except as otherwise stated, could testify competently to each fact herein.

2. CSP markets and sells hair products, cosmetics, perfumes, and other products throughout France, including in CSP's over 200 "Bleu Libellule" stores located throughout France and French territories. CSP also sells products on a wholesale basis to hair salons and specialty beauty retail stores, specifically the salons of the Provalliance Group, to which CSP belongs, and which includes well-known hair salon networks such as Franck Provost, Jean Louis David and Saint Algue.

3. In 2021, CSP entered into an exclusive distribution agreement with Aquis Hairsciences Inc., the predecessor to Defendant K18 ("Distribution Agreement"), a copy of which is attached as **Exhibit 1**. The effective date of the Distribution Agreement was April 1, 2021, and the Term of the Distribution Agreement was five years. The Distribution Agreement provided for renewal terms, to which either party could opt out. CSP has faithfully performed all of its contractual obligations under the Distribution Agreement since its inception. The parties performed according to the Distribution Agreement through the end of 2023 with only minor routine disputes.

4. Nothing has occurred to absolve K18 of any of its contractual duties. CSP has not breached its obligations under the Distribution Agreement, CSP has not discharged K18 of its obligations, and the parties have not terminated the existing Agreement.

Breach of CSP's Exclusive Distribution Right and K18's Obligation to Offer New Products to CSP

5. The Distribution Agreement grants CSP the exclusive right to distribute K18 products throughout France and other French territories during the Term to Professional Beauty Industrial Outlets and retail stores offering personal care and beauty products. CSP has learned that Sephora and Parashop have begun selling K18 products in their retail locations in France. Sephora

and Parashop are "retail stores offering personal care and beauty products" and are thus "Retail" stores as defined by the Distribution Agreement ¶ 2.1.1.

6. The Distribution Agreement requires K18 to offer CSP any new products or product lines it develops and to supply Plaintiff with K18 products in sufficient quantity. On July 4, 2024, CSP asked K18 to provide it with information about its K18 Christmas 2024 gift sets, such as the description and contents of the gift sets, images, the purchase price and recommended retail price, minimum order quantities, and availability date. A copy of this request is attached as **Exhibit 2**. K18 refused this request and never provided CSP with information about the Christmas 2024 gift sets. However, CSP has recently learned that Sephora is selling K18 Christmas 2024 gift sets and other newly developed K18 products. K18 had previously offered CSP these products, before withdrawing its offer on the pretext of an out-of-stock situation or a delayed product launch, only to later offer them to CSP's competitors. For example, K18 offered to CSP one new product in 2024 (10ml molecular hair oil), which CSP immediately attempted to purchase on March 19, 2024, but was told by K18 that there was a mistake in the price. While K18 sent the new pricing information eight days later, K18 also informed us that the new product was out of stock. (order n° POH240300189). A copy of that correspondence is attached as **Exhibit 3**.

<u>Breach of K18's Obligation to Fulfill CSP's Orders and Supply CSP With Sufficient Quantity of Products</u>

7. In accordance with the Distribution Agreement, CSP submitted purchase order POH240700323 (the "Purchase Order") on July 29, 2024, to purchase various quantities of six K18 hair products for $116,317 (USD), a copy of which is attached as **Exhibit 4**. Instead of supplying CSP with the ordered products, K18 responded the same day that it would be "holding this PO until contracts are signed." K18 emailed Plaintiff on August 8, 2024, that it would withhold the shipment until CSP confirmed payment of a previous invoice and agreed to sign *a new, short-term, non-exclusive, and more expensive distribution agreement.* CSP quickly confirmed that the payment in question had been made, but K18 still did not ship any product to CSP. A copy of this correspondence regarding the Purchase Order is attached as **Exhibit 5,** and a copy of the new, short-term, non-exclusive, more-expensive distribution agreement is attached as **Exhibit 6**.

8.      On September 16, 2024, CSP followed up with K18 about the Purchase Order. On September 23, 2024, CSP warned K18 that CSP would run out of K18 products if K18 did not fill CSP's order, and demanded shipment by September 27, 2024. Yet K18 has still refused to provide CSP with any products unless K18 signs the new agreement. A copy of this correspondence is attached as **Exhibit 7.**

<u>CSP is Losing Goodwill, Market Share, Customers, Sales and Inventory</u>

9.      In the absence of an injunction, CSP's stock of K18 product will be completely depleted in the first half of 2025. CSP has no way of replenishing its inventory of K18 products other than by K18 filling CSP's purchase orders.

10.     CSP has gone from having approximately 100% market share in France for K18 products in the PBIO and Retail channels, to a much lower market share in light of competition from Sephora and Parashop. As a direct consequence of Defendant's misconduct, Plaintiff's average sales in 2024 are down 14% from its 2023 levels, and since Sephora began offering K18 products, Plaintiff's monthly sales of K18 products have decreased by 31%. CSP's decline in sales has been accompanied by a loss in customers, as certain customers have switched from buying K18 products from Plaintiff to buying them from Sephora and Parashop, especially as Parashop is able to offer K18 products at a discount.

11.     CSP's inventory levels of K18 products are almost depleted. These low inventory levels are harming Plaintiff's ability to operate its business as it would in the normal course. K18's refusal to fill CSP's orders has left CSP with only two choices: maintain prices and run out of K18 stock faster (which would harm CSP's goodwill with its customers) or raise prices and lose customers and goodwill. CSP has chosen the latter approach as the way to try to minimize the impact of K18's misconduct on CSP's goodwill and reputation.

12.     At CSP's 200+ Bleu Libellule stores in France, CSP's sales of K18 and customers have decreased precipitously over the past few months. As compared to the same time periods in 2023, Bleu Libellule sales of K18 products decreased by approximately 49% in September 2024, 32% in November 2024, and 43% in December 2024.[1] CSP's number of unique K18 customers in

---
[1] The December figures only represent Weeks 49, 50, and 51 of the years 2023 and 2024.

its Bleu Libellule stores has dropped similar amounts: 52% in September 2024, 26% in November 2024, and 43% in December 2024. And the number of "customer acquisitions" (customers who purchased a K18 product and created an account with CSP at the same time) likewise declined dramatically: 51% in September 2024, 45% in November 2024, and 40% in December 2024. I attribute these metrics to the unlawful competition from Sephora and Parashop, as well as to CSP's being forced to raise its prices to avoid running out of inventory.

13. Moreover, because Defendant refused to offer Plaintiff its 2024 K18 Christmas sets, CSP is losing not only its regular customers, but prospective and new holiday customers as well, who would be likely to purchase other products, both during the holiday season and beyond.

14. The Bleu Libellule sales information reported above shows that CSP has been losing goodwill, market share, customers and sales, and a reduction of inventory, as a direct result of K18's breaches of the Distribution Agreement.

I declare under the penalty of perjury and the laws of the United States that the foregoing is true and correct this 14th day of January, 2025, at Gallargues, France.

_____
EMILIE CHICH